UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KETICIA VICTORIA PELAEZ,

    Plaintiff,

v.

MCT GROUP, INC., et al.,

    Defendants.

Case No. 2:10-CV-00733-KJD-LRL

**ORDER**

Currently before the Court is Defendant MCT Group Inc.'s ("MCT") Motion to Change Venue (#6). Plaintiff filed a Response in Opposition (#10). No Reply was filed.[1] Subsequently, Defendant filed a Motion to Amend/Correct its Motion to Change Venue.[2] (See #12.)

**I. Background**

This action was filed on May 19, 2010, alleging three claims for relief, 1) Conversion; 2) Invasion of Privacy; and 3) Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. While living in California in 2003, Plaintiff and her husband entered into a retail installment sales contract for the purchase of a used Ford Mustang for her husband's use. In 2004, Plaintiff and her husband relocated to Las Vegas, Nevada. Sometime between August and December 2004, Plaintiff's husband stopped making timely payments on the sales contract, and in January 2005, the Ford Mustang was repossessed. On December 30, 2005, Defendant MCT —a collection company that had acquired the debt—filed a Complaint against Plaintiff in the Superior Court of California, County of San Diego, for an alleged deficiency balance of the 2003 sales contract. Plaintiff did not

---

[1] Prior to filing its Response in Opposition, Plaintiff filed an Amended Complaint (#9). The Amended Complaint however, has no bearing or effect on the underlying Motion.

[2] The Motion to Amend was filed as a "Stipulation to Redact Exhibits", and sought to redact exhibits 1–8 that had been filed together with the Motion to Change Venue pursuant to Fed. R. Civ. P. 5.2(a). The Stipulation was granted per Court Order #14.

file an answer, and on July 3, 2006, a Default Judgment was entered against Plaintiff in the Superior Court of California in San Diego.

In December 2007, Plaintiff and her husband divorced. The Divorce Decree stated that Plaintiff's husband would assume responsibility for the deficiency balance of the car in the amount of $7,310.46. Subsequent to Plaintiff's divorce, she was laid-off from her previous job at the Mandalay Bay Casino and began working for a 99¢ Only Store in Las Vegas, making $8.05 per hour, earning less than $362.50 per week.

On or about December 3, 2009, Plaintiff received a one-page, one-sided, typed communication from Defendant stating that Plaintiff owed Defendant a balance of $2,492.27. The document encouraged Plaintiff to contact Defendant by dialing 1-800-622-2242 and asking to speak with Chris Peters. Plaintiff then contacted the Legal Aid Center of Southern Nevada, Inc. in regard to her alleged debt, as she believed the communication from Defendant to be incorrect. Subsequently, Plaintiff received a certified letter from the Defendant containing a copy of a California Judgment entered in the Superior Court of California, in San Diego, citing only an award of $6,501.76 to Defendant.

Sometime later, Plaintiff learned that her checking account at JP Morgan Chase in Nevada had been attached pursuant to a California Writ of Execution dated Janaury 26, 2010, filed in the Superior Court of California. On February 26, 2010, the attachment to Plaintiff's JP Morgan Chase Bank account was completed, and a total levy of $2,520.70 was removed from Plaintiff's checking account and eventually transferred to Defendant. Here, Plaintiff avers that the funds in her JP Morgan Chase account were exempt from attachment under both Nevada and Federal law because she was making less than $362.50 per week, and because Defendant failed to domesticate the foreign judgment in Nevada.

As stated above, Defendant's instant Motion seeks that the Court Dismiss this case, or in the alternative, change venue pursuant to Fed. R. Civ. P. 12(b)(3). Specifically, Defendant seeks that the

1  case be transferred to the Central District of California because MCT "does not reside in this district,
2  maintains no office in this district, does not conduct business in this district, [and] does not contact
3  debtors in this district." (#6 at 2.)  MCT avers that the Court does not have general or specific
4  jurisdiction over them.  The Court does not agree.

**II. Legal Standard**

    **A. Dismissal under Rule 12(b)(3)**

A defendant may raise a Rule 12(b)(3) motion to dismiss for improper venue in its first responsive pleading or by a separate pre-answer motion.  Fed. R. Civ. P. 12(b)(3).  Once the defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).  When making a venue determination under Rule 12(b)(3), the well-pleaded allegations of the Complaint are taken as true, and any evidence or disputed facts must be viewed in the light most favorable to the non-moving party.  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004); see also Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 448–49 (5th Cir. 2008).

Plaintiff avers that venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) which state that a civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b).  Section (c) provides, in pertinent part, that a corporate defendant is deemed to reside "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391.

Under 28 U.S.C. § 1406, should a court determine that venue is improper within its district, it may dismiss the case or transfer it to a district where venue properly lies.  See § 1406(a).

Furthermore, under 28 U.S.C. § 1404, a district court may "in the interest of justice" transfer a case to any other district where venue lies "[f]or the convenience of parties and witnesses" even if venue is proper in the original district under § 1391.  28 U.S.C. § 1404(a).

Defendant argues that venue pursuant to §1391 is not proper here because MCT does not reside in this district, because the events giving rise to Plaintiff's claim occurred outside of the district, and because MCT is not subject to personal jurisdiction in Nevada.  Resultantly, Defendant asks the Court to dismiss the action, or alternatively, that the Court transfer venue to the Central District of California.  An examination of the Complaint however, reveals that venue is proper in this district pursuant to 28 U.S.C. § 1391.

### B. Personal Jurisdiction

Personal jurisdiction over nonresident defendants may be predicated on "continuous and systematic" contacts with the forum state, subjecting the defendant to a court's "general" jurisdiction, see Shute v. Carnival Cruise Lines, 897 F.2d 377, 380 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585 (1991), or on the fact that the cause of action arose out of a defendant's forum related activities, subjecting him to a court's "limited" or "specific" jurisdiction.  Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991); Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1194–95 (9th Cir. 1988).  Plaintiff contends that general jurisdiction cannot be determined without further discovery of MCT's business practices; thus, for the sake of judicial economy, the Court's venue inquiry here turns to whether MCT's alleged conduct should subject it to this Court's specific jurisdiction.

A district court can assert limited jurisdiction over a nonresident defendant if the following three conditions are satisfied: (1) the nonresident defendant performs some act purposefully availing himself of the privilege of conducting activities in the forum; (2) the claim arises out of the defendant's forum related activities; and (3) the exercise of jurisdiction is reasonable.  Sinatra, 854 F.2d at 1194 (citing Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 839 (9th

4

Cir.1986)). Each of these tests must be satisfied. Peterson v. Kennedy, 771 F.2d 1244, 1261 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986). At this early stage of the proceedings, Plaintiff need only make a prima facie showing of personal jurisdiction, and, as no evidentiary hearing on this issue has been held, thus the Court must treat Plaintiff's allegations as true. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).

Here, MCT has purposefully availed itself within the district. It is well established that a single contact with the forum state, not involving the physical presence of the defendant, can be a sufficient basis upon which to establish jurisdiction over the defendant. McGee v. International Life Ins. Co., 355 U.S. 220, 223,(1957). The communication at issue here is not merely a means of conducting some other primary business within the forum state. Rather, the Complaint alleges that the communications sent to Plaintiff by MCT, together with its attachment of Plaintiff's Nevada bank account, are the very subject matter of the action pursuant to the FDCPA. See Paradise v. Robinson and Hoover, 883 F.Supp. 521 (D. Nev. 1995). Moreover, because "receipt of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act," Bates v. C & S Adjusters, Inc., 980 F.2d 865, 868 (2d Cir. 1992), the district where a communication is received is a proper venue under subdivision (2) of section 1391(b). Id. at 866–867.

The allegations in Plaintiff's Complaint support the exercise of personal jurisdiction over Defendant. Individuals should be able to file suit in the state where they receive alleged illegal communications by out-of-state collection agencies. If not, collection agencies "could invoke the protection of distance and send violative letters with relative impunity." Vlasak v. Rapid Collection Systems, Inc., 962 F.Supp. 1096, 1102 (N.D. Ill. 1997). Moreover, states share an interest in preventing abuse by collectors. As articulated by the Senate Committee on Banking, Housing and Urban Affairs, the FDCPA was established because "collection abuse has grown from a state problem to a national problem . . . [Federal legislation is necessary because] State officials are unable

to act against unscrupulous debt collectors who harass consumers from another state." 1977 U.S.Code Cong. & Ad. News 1695, 1697.  "Accordingly, if it becomes more difficult and costly for consumers to file suit, consumer protection within the states would be eroded." Gilmor v. Account Management, Inc., 2009 WL 2848278 at *4 (N.D. Ga., 2009).  Therefore, viewing the facts in the light most favorable to the Plaintiff, the Court finds personal jurisdiction over the Defendant is warranted in this case and that Defendant's Motion to Change Venue must be denied.

**III.  Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant MCT Group Inc.'s ("MCT") Motion to Dismiss/Change Venue (#6) is **DENIED**.

DATED this 10th day of February 2011.

_____
Kent J. Dawson
United States District Judge